UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADIL SHAFI,

       Counter-Plaintiff/Third Party Plaintiff,

vs                                       Case No: 09-10454
                                         Honorable Victoria A. Roberts

FREDERICK WEIDINGER and
BREAINTECH, INC.,

       Third Party Defendant/Counter Defendant.
_____/

and

ROBOTIC VISION TECHNOLOGIES, LLC, and
FREDERICK WEIDINGER, an individual,

       Plaintiffs,

vs                                         Case No: 11-12909
                                         Honorable Victoria A. Roberts

ADIL SHAFI,

       Defendant.
_____/

**<u>ORDER</u>**

**I.**     **INTRODUCTION**

      Before the Court is Defendant Adil Shafi's Rule 12(b)(6) Motion to Dismiss Case

11-12909 and Request for Costs.

      The Court treats this Rule 12(b)(6) motion as a Rule 56 Motion for Summary

Judgment; both sides attach, discuss, and rely on matters outside of the pleadings.

      The Court **GRANTS** summary judgment on the Breach of Share Purchase

Agreement ("SPA") Warranties claim; that claim is barred by res judicata.  The Court **DENIES AS MOOT** the Motion for Summary Judgment on the Breach of Fiduciary Duties claim; that count was removed from the original Complaint on June 6, 2011 when Plaintiffs filed an Amended Complaint.  The Court **DENIES** summary judgment on Counts II, III, and IV of the Amended Complaint, alleging Breach of Non-Competition Agreement, Defamation and Unfair Competition.

Finally the Court **DENIES** Shafi's request for sanctions.

## II.    FACTS

Plaintiff Robotic VISION Technologies, LLC ("RVT") designs and sells software and services for vision-guided robotics.  Plaintiff Frederick Weidinger is the Chief Executive Officer ("CEO") of RVT.  Prior to the formation of RVT, Weidinger was the CEO and on the Board of Directors of Braintech, a publicly traded robotic vision software technology company that went into foreclosure and eventually failed.  On May 24, 2010, after Braintech's failure, RVT purchased all of Braintech's assets at public auction, including all legal claims it possessed at that time.

Defendant Adil Shafi is the former president and sole shareholder of SHAFI, Inc. ("SI") and Shafi Innovation ("SII"), which also designed and sold software solutions and services for vision-guided robotics.  Now he is the president, CEO, and majority shareholder of Advenovation, Inc., another participant in the robotic vision software technology industry, and a competitor to RVT.

The dispute between the parties began in 2009 after an unsuccessful acquisition between Braintech and Shafi.  On August 12, 2008, Braintech and Shafi entered into

2

2:11-cv-12909-VAR-LJM   Doc # 12   Filed 12/19/11   Pg 3 of 25   Pg ID 257

"Sale Agreements;" Braintech acquired 100% of the stock of SI and 80% of the stock of SII. The Sale Agreements consisted of: (1) a Share Purchase Agreement ("SPA") which included a number of detailed schedules; (2) a Lock-Up Agreement; (3) an Employment Agreement between Braintech and Shafi Shafi became the Chief Operating Officer ("COO") of Braintech and a director of the company; (4) a Non-Competition Agreement between Braintech and Shafi; (5) a Letter Regarding Indebtedness of SI and SII, and (6) a Promissory Note from SI and SII. SI and SII became subsidiaries of Braintech. As consideration, Shafi received 2,999,700 shares in capital stock of Braintech to be issued at closing, an additional 1,000,000 shares to be issued upon the achievement of certain performance criteria, and approximately $100,000 cash. Additionally, Braintech agreed to pay $900,000 of Shafi, Inc. Debt.

Plaintiffs say Braintech learned soon after execution of the Agreements that Shafi made false and fraudulent representations about the "commitments," "revenue pipeline," and "economic value" of his companies and their intellectual property, including a product called "Reliabot." (*See* Doc. # 2; First Amended Complaint ("FAC") at ¶s 30-34). Plaintiffs say Braintech suffered damages as a result of Shafi's breaches of warranties. (*See id.* at ¶ 43).

On November 19, 2008, approximately three months after execution of the Sale Agreements, Braintech  placed Shafi on administrative leave with pay and benefits. Plaintiffs say he was "terminated for good cause" on November 24, 2008. (FAC at ¶ 48).

III.     PROCEDURAL HISTORY

A.     2009 Case: Braintech v. Shafi, No. 09-10454

On February 6, 2009, Braintech sued Shafi in this Court seeking rescission of the Sale Agreements due to material misrepresentations, fraudulent inducement, and breach.  (*See* Doc. # 9-2; Def. Ex. A, 2009 Michigan Complaint).  Braintech sought declaratory relief; it alleged: "Braintech maintains that it possesses the right to rescind the Sale Agreements and has tendered back all consideration it received pursuant to the Sale Agreements.  Defendant refuses to rescind the Sale Agreements and tender to Braintech its consideration and place Braintech in the same position it would have been but for the Sale Agreements." (*Id.* at ¶ 97).  In response, Shafi filed counterclaims against Braintech and third-party claims against Weidinger alleging Breach of Employment Agreement, Fraud, Securities Fraud, Conversion, and Unjust Enrichment. The Breach of Employment Agreement claims are asserted against Braintech; all other claims were asserted against both Braintech and Weidinger.

In early 2010, Braintech ran out of resources; Weidinger and all other officers and employees resigned.  Braintech's counsel, Pepper Hamilton, filed an emergency motion to withdraw.  On April 7, 2010 this Court granted the motion and stayed the case, providing Braintech an opportunity to retain new counsel.  (*See* No. 09-10454, Doc. # 29).  The Court reminded Braintech that a corporation must have counsel appear on its behalf or risk default or dismissal "since a corporation cannot appear otherwise than through an attorney in federal Court." (*Id.* at 2).

On May 18, 2010 counsel for Braintech and Weidinger informed the Court that

4

they would serve as counsel only to defend against Shafi's counterclaims.  On June 3, 2010, the Court dismissed Braintech's claim against Shafi for rescission for failure to prosecute; Braintech, which was by then defunct, failed to retain successor counsel. The Court dismissed Weidinger from the case, and dismissed Shafi's Fraud, Securities Fraud, Conversion, and Unjust Enrichment claims against Braintech, leaving only his Breach of Employment Contract claims for trial.

### B.    2011 Case: Robotic Vision Technologies and Frederick Weidinger v. Shafi, No. 11-12909

On May 14, 2011, RVT and Weidinger filed suit against Shafi in the United States District Court for the Eastern District of Virginia.  In the five-count Complaint, Plaintiffs alleged Shafi breached the SPA warranties and Non-Competition Clause of his Sale Agreements with Braintech, as well as his fiduciary duties to the company; they also alleged Shafi was liable for defamation and unfair competition.

On June 6, 2011 Plaintiffs filed a First Amended Complaint removing the Breach of Fiduciary Duties claim.  The case was transferred to this Court.  On November 9, 2011, Defendant moved to dismiss the Complaint.  That motion is fully briefed.

## IV.    PARTIES' ARGUMENTS

### A.    Defendant's Motion

First, Defendant says res judicata bars Plaintiffs' claims because they were or could have been litigated in the 2009 case.  Defendant says the dismissal of that case constitutes a final adjudication on the merits for res judicata purposes, and the other prongs of the res judicata test – a subsequent action between the same parties or their

5

privies; an issue in the subsequent action which was litigated or should have been litigated in the prior action; and an identity between the causes of action – are met. Second, Defendant claims collateral estoppel bars Plaintiffs' Breach of SPA Warranties and Breach of Fiduciary Duties claims.  Third, Defendant says Plaintiffs' claims should have been pleaded as compulsory counterclaims to his counterclaims in the 2009 case. He argues the four elements comprising Fed. R. Civ. P. 13(a) governing compulsory counterclaims are present.

Finally, Defendant says: (1) the Breach of Fiduciary Duties claim fails because the statute of limitations expired; (2) the Breach of Non-Competition Agreement claim is precluded by Section 12(g) of Defendant's employment contract, which says Defendant can be held to a non-compete agreement with Braintech only if Braintech pays him a severance, which it did not; (3) the Defamation claim is not pleaded with the particularity required by Michigan law; and (4) Plaintiffs fail to state a claim for unfair competition because they want to "gag" Defendant and prohibit him from discussing his intellectual achievements, which he is permitted to do.  Defendant believes he is entitled to costs under 28 U.S.C. § 1927 ; he says Plaintiffs unreasonably and vexatiously multiplied the litigation by filing the 2011 lawsuit.

**B.    Plaintiffs' Response**

Plaintiffs say their claims were not, and could not have been, litigated in the 2009 case because the time periods involved in the two causes of action are distinct. Plaintiffs say the 2009 case, where Braintech sought rescission of the SPA, was based on Shafi's material *precontractual* misrepresentations and subsequent material breaches of the SPA by Shafi, and their claims for breach of the Non-Competition

6

Agreement (Count II), Defamation (Count III) and Unfair Competition (Count IV) involve Shafi's conduct after Braintech terminated his employment.   Further, they contend material factual and legal distinctions exist between the 2009 action and RVT's breach of the SPA claim (Count I).   Therefore, there is no "identity of the cause of actions," Plaintiffs say.   Additionally, Plaintiffs argue they were not required to bring all claims at the same time as the original rescission action merely because the claims were known and could have brought at that time.   They rely on the permissive joinder rules, Federal Rules of Civil Procedure 18(a) and 20(a).   Plaintiffs say Defendant's motion to dismiss the Breach of Fiduciary Duties claim is moot because they withdrew that claim when they filed an Amended Complaint as of right under Fed. R. Civ. P. 15(a)(1)(B).

Plaintiffs say collateral estoppel only bars re-litigation of specific issues, not entire claims, and Defendant fails to identify the precise issues he believes were actually litigated and decided in the 2009 case.   They say "[t]he issues that would have been litigated in the prior 2009 Action are fundamentally different than those involved in the instant claim for money damages.   Collateral estoppel is therefore inapplicable." (Doc. # 10 at 12).

Plaintiffs next argue their claims are not compulsory counterclaims to Shafi's 2009 counterclaims because they do not arise out of the same transactions or occurrences as Shafi's counterclaims.

Finally, Plaintiffs contend Shafi's substantive arguments seeking dismissal of their claims fail.   They say Section 12(g) of the Employment Agreement does not preclude the breach of Non-Competition Agreement claim because that paragraph "merely reinforces that if Braintech pays Shafi a severance, the 3 year/1 year restriction

period in the Non-Competition Agreement applies, regardless of whether Shafi is

terminated for good cause." (*Id.* at 17).  In addition, they say they properly pleaded

defamation; they request leave under Rule 15 to amend their Complaint should the

Court conclude greater specificity is required.  Finally, they say they properly pleaded

unfair competition because their Amended Complaint is replete with examples of

fraudulent and deceptive conduct on Shafi's part that is harmful to his competitors and

the general public.

   Plaintiffs ask that the Court deny Defendant's motion for sanctions; they

emphasize that § 1927 focuses on the conduct of the litigation, not its merit.

## V.   ANALYSIS

### A.   Standard of Review

#### 1.   Defendant's motion will be treated as one for summary judgment

   As an initial matter not raised by Plaintiffs, Defendant attaches and relies on

matters outside of the pleadings in support of his motion to dismiss.  Under Fed. R. Civ.

P. 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings
> are presented to and not excluded by the court, the motion must be
> treated as one for summary judgment under Rule 56.  All parties must be
> given a reasonable opportunity to present all the material that is pertinent
> to the motion.

   In *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, the Fourth Circuit

observed that res judicata is an affirmative defense, typically inappropriate for Rule

12(b)(6) treatment:

> Defendants face a procedural stumbling block to asserting the[ ]

8

affirmative defenses [of collateral estoppel and res judicata].  A motion
under Rule 12(b)(6) is intended to test the legal adequacy of the
complaint, and not to address the merits of any affirmative defenses.  In
the limited circumstances where the allegations of the complaint give rise
to an affirmative defense, the defense may be raised under Rule 12(b)(6),
but only if it clearly appears on the face of the complaint....Because
neither of the asserted defenses appears on the face of the complaint, it is
inappropriate to address them in the current posture of the case.

4 F.3d 244, 250 (4th Cir. 1993); *see also Moch v. East Baton Rouge Parish Sch. Bd.*,

548 F.2d 594, 596 n. 3 (5th Cir. 1977) ("Generally a party cannot base a 12(b)(6) motion

on res judicata.  That doctrine must be pleaded as an affirmative defense....Yet, if the

trial court has treated the 12(b)(6) motion as one for summary judgment, its dismissal

under 12(b)(6) is not reversible error.").

There are exceptions to these rules.  For example, district courts can consider

exhibits attached to a motion to dismiss if they are referred to in the plaintiff's complaint

and are central to the plaintiff's claim.  *Jackson v. City of Columbus*, 194 F.3d 737, 745

(6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S.

506 (2002); *cf. Helfrich v. Metal Container Corp.*, 102 Fed.Appx. 451, 452 (6th Cir.

2004) (rejecting plaintiff's contention that claim preclusion is not a basis for dismissal

under Rule 12(b)(6) because matters outside the pleadings must be considered where

the court only considered public records in ruling on the motion).

With regard to a motion to dismiss on res judicata grounds, a district court may

take judicial notice of other court proceedings without converting the motion into one for

summary judgment as long as those proceedings are relied on not for the truth of the

facts recited there, but for the existence of the opinion.  *Winget v. JP Morgan Chase*

*Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (citing *Southern Cross Overseas*

9

*Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)).

Defendant urges the Court to consider and weigh the preclusive effect of at least two documents that are not central to Plaintiffs' Complaint and go beyond establishing the mere existence of the 2009 case: the Employment Agreement between Shafi and Braintech and a letter written in August 2009 by Braintech's former counsel James VandeWyngearde. The parties dispute the proper interpretation of a clause in the Employment Agreement and the relevance of the letter to the res judicata argument. Plaintiffs do not ask the Court to disregard these documents. Additionally, in response to Defendant's argument that Defamation is not pleaded with sufficient particularity, Plaintiffs refer the Court to portions of Shafi's deposition testimony.

Accordingly, the Court treats the motion to dismiss as one for summary judgment. Because Plaintiffs had an adequate opportunity to respond and likewise attached an exhibit to their response, no further opportunity to respond is necessary. *See, e.g.*, *Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Authority*, 402 Fed. Appx. 990, 993 (6th Cir. 2010) (district court's failure to provide plaintiff notice and additional opportunity to respond before considering outside evidence on defendant's motion to dismiss was harmless where over 375 pages of evidence accompanied plaintiff's response).

## 2. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec.*

10

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "As the moving party, Defendant[ ] bear[s] the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim."  *Moses v. Providence Hosp. and Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009).

Summary judgment on res judicata grounds is proper where "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."  *Montana v. United States*, 440 U.S. 147, 153 (1979).  This is because of the "fundamental precept" that "a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the parties or their privies.'"  *Id.* (quoting *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)).

### B.    Claim Preclusion

The Sixth Circuit applies federal res judicata principles to successive federal diversity actions.  *See J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996).  In *J.Z.G. Resources*, the Sixth Circuit explained:

> The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion.  The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it.  Claim preclusion applies not only to bar the parties from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action.

*Id.* (emphasis in original).

For claim preclusion to apply, four elements must be satisfied:

(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties of their "privies"; (3) an issue in the subsequent action which was litigated or which should have been

11

litigated in the prior action; and (4) an identity of the causes of action.

*Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

Plaintiffs contend Shafi cannot meet prongs one, three, and four of this test.

### 1.    A Final Decision on the Merits

In a footnote, Plaintiffs argue that dismissal of Braintech's 2009 Complaint was based on "unique procedural circumstances that do not serve as an adjudication on the merits." (Doc. # 10 at 8 n. 3). They emphasize that the Court did not expressly dismiss the Complaint with prejudice and ask that the Court now modify that Order to provide a dismissal without prejudice.

Plaintiffs' argument fails. The Court's June 3, 2010 dismissal of Braintech's Complaint for failure to prosecute was pursuant to Fed. R. Civ. P. 41(b). Under that rule, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order [the action may be dismissed]." While the Court did not expressly state that the dismissal was with prejudice, the rule makes clear that a dismissal operates as an adjudication on the merits. Fed. R. Civ. P. 41(b); *see also Bragg*, 570 F.3d at 776-77; 18A CHARLES ALAN WRIGHT ET. AL., FEDERAL PRACTICE & PROCEDURE § 4440 (2d ed. 2011). "The purpose of this provision is to establish a strong sanction to enforce compliance with proper procedure. Quite apart from Rule 41(b), this purpose of itself would suggest that penalty dismissals often should preclude a second action on the same claim." WRIGHT ET. AL., *supra*.

The Sixth Circuit agrees:

Plaintiff's argument that the district court's dismissal of her 2007 lawsuit was not "a final decision on the merits" is refuted by the plain language of Rule 41(b) and by clear precedent of our court.  Because plaintiff's 2007 claims were dismissed pursuant to Federal Rule of Civil Procedure 41(b), the first element required for res judicata to apply was clearly met in this case.  By its plain language, an involuntary dismissal under Federal Rule of Civil Procedure 41(b) constitutes an adjudication on the merits and carries preclusive effect *** The district court dismissed plaintiff's 2007 claims pursuant to Rule 41(b).  In doing so, the district court did not specify that its order would not operate as an adjudication on the merits.  Nor did the court include any information limiting the order's preclusive effect.  In addition to the language of the Rule, our court has interpreted similar orders to have preclusive effect.  In *Stelts v. University Emergency Specialists, Inc.*, 20 Fed. Appx. 448 (6th Cir. 2001), the district court dismissed, for lack of prosecution, a former employee's suit alleging that he was improperly forced to resign.  In our unpublished opinion, we held that because the district court's decision constituted a final judgment on the merits, the plaintiff's claims in a subsequent action were barred by res judicata.  *Id.* at 449.

*Bragg*, 570 F.3d at 776-77.

Plaintiffs seek modification of the Court's June 2010 Order to provide that it was without prejudice; the Court declines to do so.  Such "magic words" are not necessary given the law of this circuit.  The dismissal was with prejudice and barred re-filing of the same claim in the Eastern District of Michigan.  If Braintech wanted clarification or modification of that Order, it should have filed a motion to amend within the applicable time period.  *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment.").  Defendant satisfies the first res judicata element.

### 2.    A Subsequent Action Between the Same Parties or their "Privies"

Plaintiffs do not dispute that the 2009 and 2011 cases are between the same parties or their privies.  Braintech was the predecessor company to RVT; RVT

13

purchased the company's assets at public auction, and acquired all of Braintech's legal claims.  Weidinger was the CEO of Braintech and is now the CEO of RVT; furthermore, he was a third party defendant in the 2009 case.  Defendant establishes the second element of the res judicata test.

### 3.   An Issue in the Subsequent Action which was Litigated or Which Should have been Litigated in the Prior Action

#### i.   Plaintiffs' Breach of Non-Competition Agreement, Defamation, and Unfair Competition Claims could not have been litigated in the 2009 action.

Much of the parties' arguments center around the third prong of the res judicata test.  Plaintiffs vehemently deny that the issues they now raise were, or should have been, litigated in the 2009 action.  Plaintiffs say the 2009 action merely sought rescission of the SPA based on Shafi's material *precontractual* misrepresentations and subsequent breaches of the SPA.  This all happened prior to, and during, his employment at Braintech.  They say the majority of the Counts in the current suit (Counts II, III, and IV) involve a different time period – Shafi's conduct after he was terminated from Braintech and after he began working at Advenovation in February 2009 and as a sales representative at Aptura in 2010.  Plaintiffs say Shafi's work at Advenovation and Aptura and his alleged disparagement of Braintech, did not occur until after the filing of the initial Complaint on February 6, 2009.

On the other hand, Defendant relies on a letter to his attorney from Braintech's former counsel dated August 21, 2009, indicating that Braintech was aware that it had claims for unfair competition and defamation at that time.  (*See* Doc. # 9-5; Def.'s Ex. D,

8/21/09 VandeWyngearde Letter).

Count II of the Amended Complaint alleges Breach of Non-Competition Agreement.  It says Shafi agreed not to compete directly or indirectly with Braintech and breached the agreement by creating Advenovation, which competed directly with Braintech prior to its sale, and now competes with RVT.  The Complaint alleges the Non-Competition Agreement contained a clause prohibiting Shafi from disparaging Braintech and Weidinger, and that he violated this clause as well.  Count III alleges Defamation.  The Complaint says Shafi defamed Braintech, RVT, and Weidinger "to dozens within the vision-guided robotics and machine vision systems industries" (FAC at 19-20) after he began working at Advenovation and Aptura.  Count IV alleges Unfair Competition, stating Shafi placed false and misleading statements on Advenovation's website that suggest the "commercial success, commercial relationships, good will, and brand," of Braintech's product belong to him.  (*Id.* at 21).

The Court agrees with Plaintiffs that Defendant does not establish that these claims were, or could have been, litigated in the prior action. Res judicata only applies to claims that were ripe at the time the initial Complaint was filed.  *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006).  While Exhibit D suggests that Braintech became aware of the facts underlying Counts II, III, and IV of Plaintiffs' 2011 Complaint prior to this Court's June 3, 2010 dismissal of the 2009 case, Defendant presents no evidence that Braintech was aware of these facts when it filed the original Complaint.  Nor does Defendant dispute Plaintiffs' claim that he did not create Advenovation (or its website) or begin working at Aptura until after the filing of the Complaint.

15

2:11-cv-12909-VAR-LJM   Doc # 12   Filed 12/19/11   Pg 16 of 25   Pg ID 270

Defendant provides no authority for his implicit proposition that Braintech was required to amend its Complaint to include these claims or forfeit ever bringing them. Instead, the law is in Plaintiffs' favor.  In *Rawe*, the Sixth Circuit dealt directly with this issue:

> We [ ] reject the argument that res judicata bars Rawe's claims based upon Liberty Mutual's alleged conduct after Rawe filed the initial complaint on the theory that Rawe could have amended her complaint to include [these] ongoing alleged wrongdoings.  Instead, we follow the majority rule articulated by the Wright and Miller treatise "that an action need include only the portions of the claim due at the time of commencing that action," because "the opportunity to file a supplemental complaint is not an obligation."  18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4409 (2d ed. 2002).  *See also Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000) ("[W]e agree with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed."); *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[W]e do not believe that the res judicata preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation."); *Spiegel v. Continental Ill. Nat'l Bank*, 790 F.2d 638, 646 (7th Cir. 1986) (holding that res judicata does not bar new action based on alleged acts occurring after the filing of the first law suit).

462 F.3d 521, 530 (6th Cir. 2006).

Defendant cannot satisfy the third prong of the collateral estoppel test for Counts II, III, and IV; these claims are not barred by res judicata.

### ii.   Plaintiffs' Breach of Non-Competition Agreement, Defamation, and Unfair Competition claims are not compulsory counterclaims to Shafi's 2009 counterclaims.

The Court also rejects Defendant's compulsory counterclaim argument. Under Fed. R. Civ. P. 13(a), a claim is a compulsory counterclaim (in this case it would in fact be a counter-counterclaim) that must be asserted by an opposing party at the time that

16

the original complaint is filed if the claim: "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."

This circuit utilizes the "logical relation" test to determine whether a claim is a compulsory counterclaim; under this test, the Court asks: Is there a logical relationship between the two claims? *Maddox v. Kentucky Fin. Company, Inc.*, 736 F.2d 380, 382 (6th Cir. 1984). If the "claim and counterclaim will present entirely different legal, factual, and evidentiary questions" such that "the interests of judicial economy and efficiency would [not be served] by requiring that the two claims be heard together," they are not compulsory. *See id.* at 383.

The 2009 action seeking rescission of the Sale Agreements based on Shafi's material misrepresentations presented different legal, factual, and evidentiary questions than Counts II, III, and IV of this Complaint. These counts all arise from conduct that post-dated the filing of the 2009 Complaint. Moreover, they are not logically related to Shafi's counterclaims to the 2009 Complaint, which involved Braintech's conduct in carrying out various provisions of the Sale Agreements after Braintech hired Shafi as COO and purchased his companies. Shafi's counterclaims were entirely unrelated to his work at Advenovation and Aptura and to the time period following his termination from Braintech (apart from his claim that Braintech failed to pay him severance in violation of the Employment Agreement); did not involve statements made to third parties; and, did not involve competition between Shafi and Braintech. *See In re Rebel Coal Company, Inc.*, 944 F.2d 320, 321-22 (6th Cir. 1991) (where two claims relate to substantially "different actions, violations and fines" one is not a compulsory

17

counterclaim to the other); *Maddox*, 736 at 383 (debt counterclaim to Truth in Lending Act claim permissive rather than compulsory even though the two claims "[arose] from the same transaction within the literal terms of Rule 13(a)" because they "[would] present entirely different legal, factual, and evidentiary questions.").

Counts II, III, and IV are not compulsory to Shafi's 2009 counterclaims.

### 4.   Identity of Causes of Action

With respect to Count I (Breach of Share Purchase Agreement Warranties), Plaintiffs argue there is no identity of the causes of action between the two lawsuits. They say in 2009 Braintech sought to rescind the Sale Agreements it had with Shafi. This is an equitable remedy that returns the parties to the status quo.  Now, Plaintiffs affirm the SPA and seek damages for Shafi's breach.  They say,

> Shafi appears to suggest that Braintech should [ ] have brought all of its claims at the time it brought its original rescission action merely because it knew of such claims and "could have" brought them as part of the 2009 Action....In that regard, Shafi ignores that there is no compulsory joinder rule under federal law.  Under the federal rules, "joinder of claims is permissive, not compulsory."  4-18 Moore's Federal Practice-Civil § 18.02.

(Doc. # 124 at 11).

Although Plaintiffs' legal theory and relief requested changed, the facts underlying Count I of the 2011 Complaint (seeking damages for breach of contract) and the 2009 Complaint (seeking rescission) are the same.  Both center around Shafi's alleged misrepresentations to Braintech to induce Braintech to purchase his companies. The time periods involved are the same.  Likewise, the evidence necessary to sustain each action is largely the same.  Braintech could have sued for breach of contract when it sued for rescission and prong three of the res judicata test is met; in fact, breach of

18

contract was asserted as a ground for rescission.  The fact that it chose not to, and was not required to under the permissive joinder rules, does not make the doctrine of res judicata inapplicable.  *See, .e.g*, *Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987) ("[T]he doctrine of res judicata may operate for practical purposes to require joinder of claims by barring their assertion in later actions.")

Despite the alternative legal theory and remedy now sought, there is an identity of causes of action.  Plaintiffs' claim for breach of the SPA is precluded.

The Court's resolution of Shafi's res judicata argument as it relates to Count I makes an inquiry into issue preclusion (also referred to as collateral estoppel) unnecessary.

## C.   Defendant's Substantive Arguments

### 1.   Breach of Non-Competition Agreement Claim

As part of the Sale Agreements between Shafi and Braintech, Shafi agreed not to compete with or disparage Braintech "for a period of three years from the date of the agreement, or one year from the date of termination of his employment with Braintech, whichever was later."  (FAC at ¶s 45-46).  Plaintiffs allege Shafi breached the Non-Competition Agreement in connection with his work at Advenovation and Aptura.  (*See id.* at ¶s 58-67).

Shafi says the Breach of Non-Competition Agreement claim is precluded by section 12(g) of Shafi's employment contract because Braintech did not pay him severance.  The relevant language is: "For avoidance of doubt, if severance is paid to EXECUTIVE then non-compete will be effective."  He says this language extinguishes his duty not to compete because there is no dispute that Braintech did not pay him

19

severance.

The introductory sentences to the clause seem to confine its applicability to a termination by Braintech *without good cause* or a termination by Shafi for good reason. Plaintiffs contend this language does not impact the Non-Competition Agreement; it merely clarifies that if Braintech terminated Shafi without good cause, he would still be bound not to compete as long as severance was paid.

The Employment Agreement between Shafi and Braintech is governed by Delaware law.  (Doc. # 9-6; Def.'s Ex. E, Employment Agreement ¶ 18). In Delaware, "[w]hen the issue before the Court involves the interpretation of a contract, summary judgment is appropriate only if the contract in question is unambiguous."  *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007).  "Therefore, the threshold inquiry when presented with a contract dispute on a motion for summary judgment is whether the contract is ambiguous."  *Id.*  Ambiguity exists when the language in dispute is fairly susceptible of different interpretations.  *Id.*  Defendant is entitled to summary judgment only if "[his] construction of the [Severance Pay Clause of the Employment Agreement] is the *only* reasonable interpretation."  *Id.* (emphasis in original).

Whether Shafi was terminated for good cause is a material fact in dispute in *Shafi v. Braintech*, No. 09-10454.  Because there are material factual disputes and Defendant's interpretation of the Severance Pay Clause is not the only reasonable interpretation, Defendant is not entitled to summary judgment.

### 2.    Defamation

Plaintiffs allege that Shafi's disparaging remarks about Braintech, RVT, and

20

Weidinger to others in the vision-guided robotics and machine vision system industries are not only a violation of the Non-Competition Agreement, but are "patently false" and defamatory.  (FAC at ¶s 68-74).  Defendant says he is entitled to summary judgment on Plaintiffs' defamation claim, stating it is inadequately pleaded because Plaintiffs do not identify with particularity: (1) the statements that constituted defamation; (2) the speaker; and (3) the circumstances of the publication.  Plaintiffs respond that they adequately pleaded defamation by listing Shafi's alleged defamatory remarks in the Complaint.  They ask, in the alternative, that they be given the opportunity to amend under Fed. R. Civ. P. 15(a)(2).

The elements of a defamation claim are: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statements irrespective of special harm, or the existence of special harm caused by the publication."  *Gonyea v. Motor Parts Fed. Credit Union*, 192 Mich. App. 74, 76-77, 480 N.W.2d 297 (1991).  "These elements must be specifically pleaded, including the allegations with respect to the defamatory words, and the publication of the alleged defamatory words."  *Id.*  Where an element of defamation is not specifically pleaded, summary disposition may be appropriate.  *See, e.g.*, *Fisher v. Detroit Free Press, Inc.*, 158 Mich. App. 409, 413, 404 N.W.2d 765 (1987) (summary disposition correct where plaintiff failed to "sufficiently plead" a "material falsehood").

Plaintiffs described the defamatory statements Shafi allegedly made and claimed they were made "to dozens within the vision-guided robotics and machine vision systems industries, including without limitation, to representatives of Cognex,

21

Microscan, PDSI, and former Braintech exclusive customer, ABB" (FAC at ¶ 94);
however, these allegations lack sufficient particularity under Michigan law.  To meet the
defamation pleading requirements, Plaintiffs must state to whom publication of each
defamatory statement was made.  *See Gonyea*, 192 Mich. App. at 77-78.  Plaintiffs
must clarify which statement listed in ¶ 95 was made to which company listed in ¶ 94,
and to which representative of that company; they must also provide the circumstances
surrounding the publication.  *See, e.g.*, *Hightower & Hightower, Inc. v. Cmty. Living
Servs.*, No. 248882, 2004 WL 2452008, at *2 (Mich. App. Nov. 2, 2003) (per curiam)
(holding plaintiffs failed to plead defamation with sufficient particularity where the
allegations in the complaint did not indicate precisely to whom the alleged defamatory
statements were said but for the general mention of third party guardians and adult
home care providers).  In addition, the language "without limitation" contravenes the
particularity requirement.

However, the Court will not grant summary judgment; Plaintiffs say they can
easily remedy the particularity problem.  Therefore, the Court grants Plaintiffs leave to
amend their Complaint to fix its deficiencies; leave is to be freely given when justice
requires.  Fed. R. Civ. P. 15(a)(2).

### 3.    Unfair Competition

Defendant's final argument is Plaintiffs fail to state a claim for unfair competition. He says they simply want to "gag" him and prohibit him from referencing his success and achievements on his website.  He says the statements on his website regarding Reliabot, SI, and SII are not false because "Braintech claimed, as a condition precedent to its claim of [rescission], it is not using and returned to Shafi all consideration that he contributed to Braintech."  (Doc. # 9 at 20).  Plaintiffs contend RVT now owns Reliabot software and services, disputing the claim that Braintech transferred them back to Shafi. They say Defendant's deceptive and false statements on Advenovation's website "palming off Advenovation's software and services as Reliabot software and services" constitutes unfair competition.  (Doc. # 10 at 19).

Michigan's common law regarding unfair competition tracks its federal counterpart.  *Dynasty Limousine, Inc. v. Greene*, No. 255284, 2006 WL 233394, at *1 n.1 (Mich. App. Jan. 31, 3002).  It prohibits unfair and unethical trade practices that are harmful to one's competitors or the general public.  *See Clairol, Inc. v. Boston Discount Center of Berkley, Inc.*, 608 F.2d 1114, 1120 (6th Cir. 1979).  "Each [unfair competition] case is determined upon its own facts and relief is based upon the principles of common business integrity."  *Good Housekeeping Shop v. Smitter*, 254 Mich. 592, 596, 236 N.W. 872 (1931).

There is a material fact in dispute – that is, whether RVT or Shafi owns the rights to Reliabot, SI, and SII.  Defendant presents evidence that the representations on his website are not false, fraudulent, unethical or deceptive because Braintech transferred the commercial success, relationships, good will, and brand of Reliabot, SI, and SII

23

back to Shafi prior to seeking rescission of the Sale Agreements.  However, there was

no rescission.  Consequently, Plaintiffs have evidence Shafi did not accept back, or

receive, the consideration Braintech allegedly tendered.  Moreover, one factual

allegation which comprises this claim is unrelated to the success of Reliabot, SI, and

SII; Plaintiffs say: "Advenvoation holds itself out to the public as having the '#1 Ranking

for Bin Picking by Google.com.'... This is the same representation Shafi made about

Reliabot prior to its acquisition by Braintech, and which, upon Braintech's post-closing

evaluation, was discovered to be grossly misstated."  (FAC at ¶ 54).

Summary judgment on the Unfair Competition claim is not appropriate.

## VI.    CONCLUSION

The Court:

(1)    **GRANTS** summary judgment on res judicata grounds to Defendant on
Plaintiffs' Breach of SPA Warranties claim;

(2)    **DENIES AS MOOT** Defendant's Motion for Summary Judgment on
Plaintiffs' Breach of Fiduciary Duty claim; breach of fiduciary duty is not
alleged in the First Amended Complaint;

(3)    **DENIES** Defendant's Motion for Summary Judgment on Plaintiffs' Breach
of Non-Competition Agreement (Count II), Defamation (Count III), and
Unfair Competition claims (IV).  These claims will proceed to trial;

(4)    **DENIES** Defendant's request for costs under 28 U.S.C. § 1927.  Plaintiffs'
attorneys did not act unreasonably or vexatiously by filing the First
Amended Complaint; they are entitled to proceed to trial on three of the

four claims alleged in the Complaint.

The hearing scheduled for Tuesday, December 20, 2011 at 2:00 pm is cancelled.

**IT IS ORDERED.**

        /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  December 19, 2011

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
December 19, 2011.

S/Linda Vertriest
Deputy Clerk

25